# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| KATHLEEN BOXELL, | ) | CASE NO. 1:13-CV-00089 JD-RBC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| THE PLAN FOR GROUP INSURANCE | ) | |
| OF VERIZON COMMUNICATIONS, INC. | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S PETITION FOR FEES AND COSTS

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................... 1

II.     THE LEGAL STANDARDS FOR AN AWARD OF FEES ....................... 2

        A.      The Rule In *Hardt* ........................................... 2
        B.      The Standard For Determining Whether Fees Are Appropriate ............. 3

III.    DEFENDANT IS NOT ENTITLED TO FEES WITH REFERENCE TO THE MOTION
        REGARDING STANDARD OF REVIEW/SCOPE OF DISCOVERY ............. 10

        A.      Boxell's position ........................................... 5
        B.      Boxell's Arguments ......................................... 6
        C.      Analysis .................................................. 9

IV.     DEFENDANT'S CLAIM FEES FOR PROSECUTING THE COUNTERCLAIM ARE
        FAR IN EXCESS OF DEFENDANT'S ACTUAL FEES ....................... 10

IV.     DEFENDANT'S "FEES ON FEES" ARE EXCESSIVE AND SHOULD BE
        DISALLOWED ...................................................... 16

VI.     CONCLUSION ...................................................... 17

## TABLE OF AUTHORITIES

### <u>CASES</u>

*Auer v. David A. Robbins, et al,*
      519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997) ........................ 6-7

*Barnhart v. Walton,*
      535 U.S. 212, 122 S. Ct. 1265, 152 L.Ed 2d 330 (2002) .......................... 8

*Bilyeu v. Morgan Stanley Disability Plan,*
      683 F. 3d 1083 (9th Cir. 2012) ......................................... 11-13

*Bowerman v. Wal-Mart Stores, Inc.,*
      226 F.3d 574 (7th Cir. 2000) ............................................ 3

*Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,*
      467 U.S. 837, 104 S. Ct. 2774, 81 L. Ed. 2d 694 (1984) ...................... 5-7

*First Unum Life Insurance v. Bilyeu,*
      2013 U.S. Lexis 1094 (U.S. February 19, 2013) ............................... 11

*Gutta v. Standard Select Trust Insurance Plans,*
      530 F. 3d 614, 621 (7th Cir. 2008) ..................................... 11-13

*Hardt v. Reliance Standard Life Ins. Co.,*
      560 U.S. 242, 130 S. Ct 2149, 176 L.Ed. 998 (2010) ....................... 2-4, 9

*Huss v. IBM Medical and Dental Plan,*
      418 Fed. Appx. 498 (7th Cir., April 13, 2011) ............................... 3

*Kolbe & Kolbe Health Welfare Benefit Plan v. Medical College of Wisconsin, Inc.,*
      657 F. 3d 496 (7th Cir. 2011 ........................................... 3-5

*Loomis v. Exelon Corp.,*
      658 F.3d 667 (7th Cir. 2011). ........................................... 4

*National Cable & Telecommunications Association v. Brand X Internet Services,*
      545 U.S. 967, 982, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) ................... 7

*Pakovich v. Verizon LTD Plans,*
      653 F. 3d 488 (7th Cir. 2011) ......................................... 3, 4

*Spegon v. Catholic Bishop of Chicago,*
      175 F.3d 544 (7th Cir. 1999) ......................................... 4, 16

*Temme v. Bemis Co.,*
 762 F.3d 544 (7th Cir., 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Wong v. Aetna Life Insurance Company,*
 2014 U.S. District Lexis 135661 (S.D., Cal. September 24, 2014) . . . . . . . . . . . . . . . 12

## **STATUTES**

United States Code, Title 29, Section 1132(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

## I. **INTRODUCTION**

Defendant's Petition for Fees and Costs should be denied in its entirety, or if not, fees awarded should be limited to a nominal sum appropriate to the circumstances:

1.      Defendant did prevail on its counterclaim.  However, the fees it actually incurred on the counterclaim were minimal - - far less than what it claims in its motion.  Defendant significantly exaggerates its fees litigating the counterclaim by allocating one-tenth of all claimed time entries to the counterclaim, even though: (1) the work performed on virtually all of those entries clearly had nothing to do with the counterclaim; (2) only a few time entries actually concern the counterclaim; (3) those entries could have only required a few hours because the briefing on the counterclaim was minimal; (4) Defendant refused to engage in settlement negotiations - - so virtually all time it actually incurred on the counterclaim was unnecessary .  Realistically, Defendant spent at most a few hours regarding all work in reference to the counterclaim.  Any claim for fees in an excess of two or three hours is simply unwarranted.

2.      Defendant's argument that it should be awarded fees for defeating plaintiff's motion to establish that the standard of review is de novo is without merit.  The ruling on the standard of review was not a decision "on the merits".  The Court's resolution of that motion did not address the merits of the case in any way.  Therefore, as to facet of its claim, Defendant is not entitled to any fees.

///

///

///

///

## II. **THE LEGAL STANDARDS FOR AN AWARD OF FEES**

A.    The Rule In *Hardt*

In *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 130 S. Ct 2149, 176 L.Ed. 998

(2010), the Supreme Court concluded that a litigant does not need to be a "prevailing party" in

order to be entitled to attorney's fees pursuant to 29 U.S.C. § 1132(g). *Hardt* involved facts

similar to this case: the plaintiff secured a remand at the district court level because the court

found the plan administrator failed to comply with ERISA and that therefore the plaintiff did not

receive a full and fair review. The district court awarded attorney's fees because the plaintiff

secured a remand; the Fourth Circuit reversed the fee award. The Supreme Court reversed the

Fourth Circuit, holding that an award of attorney's fees pursuant to 29 U.S.C. § 1132(g) does not

require a litigant to be a "prevailing party." *Id* at 252. Instead, fees were appropriate because the

plaintiff persuaded the court that the plan administrator did not comply with ERISA and also

because plaintiff did not receive a full and fair review. In rejecting defendant's argument that a

remand order to an ERISA plan administrator could never constitute "some success on the

merits" the Court explained:

> "Reliance's argument misses the point, given the facts of this case.
> Hardt persuaded the District Court to find that "the plan administrator
> has failed to comply with the ERISA guidelines" and "that Ms. Hardt
> did not get the kind of review to which she was entitled under
> applicable law." *Id.* at p. 255.

The Supreme Court explained the type of success required in order to award an ERISA

benefits litigant fees:

> "Accordingly, a fees claimant must show 'some degree of success on
> the merits' before a court may award attorney's fees under §
> 1132(g)(1), (citation omitted). A claimant does not satisfy that
> requirement by achieving 'trivial success on the merits' or a 'purely

procedural victor[y],' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquir[y] into the question whether a particular party's success was "substantial" or occurred on a "central issue" *Id.* at p. 255.

There is "a modest, but rebuttable, presumption in favor of awarding fees to prevailing parties in ERISA cases." *Huss v. IBM Medical and Dental Plan,* 418 Fed. Appx. 498, 511 (7th Cir., April 13, 2011); *Bowerman v. Wal-Mart Stores, Inc.,* 226 F.3d 574, 592 (7th Cir. 2000): same.

B.    The Standard For Determining Whether Fees Are Appropriate

"[A]fter concluding that a party has shown 'some degree of success on the merits' and is thus eligible for fees, courts must determine whether fees are appropriate." *Pakovich v. Verizon LTD Plans,* 653 F. 3d 488, 494 (7th Cir. 2011). "To award fees, 'courts must find the non-prevailing party's litigation position was not substantially justified." *Id.*

As explained in *Temme v. Bemis Co.,* 762 F.3d 544 (7th Cir., 2014), before *Hardt* the Seventh Circuit offered two related tests for determining when an award of attorney's fees is appropriate under ERISA. While *Temme* did not decide whether *Hardt* does away with the two tests, it noted that the Seventh Circuit has affirmed the use of both tests post-*Hardt.* Applying both sets of tests, *Temme* affirmed the award of attorney's fees. *Temme, supra,* 762 F.3d at 549-551.

The "substantially justified" test looks to whether or not the losing party's position was "substantially justified", that is "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent." *Kolbe & Kolbe Health Welfare Benefit Plan v. Medical College of Wisconsin, Inc.,* 657 F. 3d 496, 506 (7th Cir. 2011). "[T]he

inquiry focuses on 'whether the defendant's litigation position was substantially justified or taken in good faith or whether it was out to harass the plaintiff." *Pakovich, supra*, 653 F.3d at 494, internal brackets omitted. "Language in some appellate opinions declaring 'bad faith' vital to an award under § 1132(g)(1) did not survive *Hardt.*" *Loomis v. Exelon Corp.*, 658 F.3d 667, 675 (7th Cir. 2011).

As explained in *Temme*, in applying "substantially the justified test" test in its original form courts examined pre-litigation behavior but now "the relevant 'substantiality' inquiry should be into a party's posture during the case as a whole, rather than treating each segment as a 'atomized line-item.' *Id.* at *16-17. In *Temme* the Seventh Circuit explained that in considering the case as a whole the district court "also noted that desirability of preventing other companies from cutting off or needlessly delaying benefits in a similar manner." *Id.* at *17.

The five factors test considers: (1) the degree of the offending party's culpability or bad faith (2) the degree of the ability of the offending party to satisfy personally an award of attorneys' fees; (3) whether or not an award of attorneys fees would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merit of the parties' positions. *Pakovich, supra,* 653 F.3d at 494, n. 2.

A lawyer should explore settlement in order to maximize the client's ultimate recovery by minimizing fees and costs. *Spegon v. The Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999).

The Seventh circuit recently overturned an award of defense fees in *Kolbe*, supra, 657 F. 3d 496. There, the Court reasoned that defendants met is initial burden of establishing "some degree of success on the merits" because two of plaintiffs claims were dismissed. *Id.* at 506. But

the court reasoned that plaintiffs litigation position was substantially justified and taken in good faith and not intended to harass defendants even though the district held that most of plaintiffs arguments lacked merit and plaintiffs were not substantially justified in bringing their state common law claim. *Id*. The district court awarded fees against plaintiffs even though it found plaintiffs had substantial justification to bring its claim for federal common law unjust enrichment. *Id*. The Seventh Circuit held that the district court's award of defense fees was an abuse of discretion and found "that plaintiff litigation position in bringing all of claims was substantially justified and taken in good faith without the purpose of harassing defendants." *Id*. The Seventh Circuit also found that "plaintiffs litigation position was certainly not unreasonable."

## III. DEFENDANT IS NOT ENTITLED TO FEES WITH REFERENCE TO THE MOTION REGARDING STANDARD OF REVIEW/SCOPE OF DISCOVERY

Defendant argues that Boxell's motion regarding standard of review/scope of discovery was not made in good faith. That argument is without merit.

A.    Boxell's position

Boxell moved as follows:

"Review should be *de novo* because, although The Plan grants discretionary authority to The plan administrator and that discretionary authority was delegated to Metropolitan Life Insurance Company ("Metlife"), Metlife did not provide Boxell with the full and fair claim and appeal practices and procedures mandated by ERISA's regulations and therefore, pursuant to the position of Secretary of Labor, and *Chevron* deference court review is without deference and thus *de novo*.

Regardless of the standard of review Boxell should be permitted to conduct discovery to

obtain the complete administrative record . . ." Document 14, pages 1-2.

B.     Boxell's Arguments

Boxell argued as follows:

"Plaintiff Kathleen Boxell ("Boxell") seeks long term disability ("LTD") benefits from

Defendant The Plan For Group Insurance Of Verizon Communications, Inc., ("Verizon"). The

Plan is administered by Metropolitan Life Insurance Company ("Metlife"). The Plan reserves

discretion which was delegated to Metlife. However, Metlife did not provide Boxell with the full

and fair claims and appeals practices and procedures mandated by ERISA regulations. In this

motion Boxell establishes that Metlife's failure to do so means that this Court must decide the

merits of Boxell's claim de novo, without any judicial deference to Metlife's decision. Boxell

also moves to establish the scope and extent of discovery, which depends, in part, on the standard

of review.

When adopting new Regulations for ERISA claims and appeals in 2000 the Secretary of

Labor stated that a decision made in the absence of the mandated procedural protections "should

not be entitled to any judicial deference." Since Congress expressly delegated rule making

authority to the Secretary of Labor, the Secretary's Regulations are given controlling weight

unless they are arbitrary, capricious, or manifestly contrary to the statute. *Chevron U.S.A., Inc. v.*

*Natural Resources Defense Counsel, Inc.*, 467 U.S. 837, 104 S. Ct. 2774, 81 L. Ed. 2d 694

(1984) ("*Chevron*"). Furthermore, because the Secretary of Labor's interpretation is a creature

of her own Regulations, her interpretation is controlling unless "plainly erroneous or inconsistent

with the regulation." *Auer v. David A. Robbins, et al*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed.

2d 79 (1997) ("*Auer*"). That deferential standard is easily met here since the Secretary

announced her interpretation after a notice-and-comment period when she finalized the

Regulations. Therefore, courts are obligated to enforce the Secretary of Labor's interpretation

even in the face of prior judicial construction of the statute. As the Supreme Court explained,

"[a] court's prior judicial construction of a statute trumps an agency construction otherwise

entitled to *Chevron* deference only if the prior court decision holds that its construction follows

from the unambiguous terms of the statute and thus leaves no room for agency discretion."

*National Cable & Telecommunications Association v. Brand X Internet Services,* 545 U.S. 967,

982, 125 S. Ct. 2688, 162 L. Ed. 2d 820 (2005) ("*Brand X*"). Thus, *Chevron/Auer* deference

requires *de novo* review of an ERISA benefits claim when, as here, the claim fiduciary fails to

comply with ERISA's full and fair claims and appeals procedures requirements." Document No.

15, pages 1-2.

Boxell further argued:

"The Regulation is ambiguous. Subpart (1) specifies the consequences of a failure to

establish and follow reasonable claims procedures:

> *"Failure to establish and follow reasonable claims procedures.* In
>
> the case of the failure of a plan to establish or follow claims
>
> procedures consistent with the requirements of this section, a
>
> claimant shall be deemed to have exhausted the administrative
>
> remedies available under the plan and shall be entitled to pursue
>
> any available remedies under section 502(a) of the Act on the basis
>
> that the plan has failed to provide a reasonable claims procedure

that would yield a decision on the merits of the claim."

The question before the Court is whether the Department's interpretation of its Regulation to require de novo review under certain circumstances, including those present here, is lawful. The Regulation "says nothing explicitly about" the question. "But such silence, after all, normally creates ambiguity. It does not resolve it." *Barnhart v. Walton*, 535 U.S. 212, 218, 122 S. Ct. 1265, 152 L.Ed 2d 330 (2002). Such ambiguities are resolved by the Department of Labor." Document Number 18, page 5.

Boxell also argued:

*"Chevron* deference is fundamentally about "who decides?" Where, as here: (1) an agency is vested with broad discretion to regulate a standard of conduct; (2) has done so, but its regulation is ambiguous on the precise question presented' (3) the agency has consistently expressed its position on the question; (4) and is not plainly erroneous or inconsistent with the Regulation, *Chevron* deference dictates that the agency's view controls. And this is especially appropriate, here, under the circumstances. As explained in *Barnhart v. Walton*, 535 U.S. 212, 122 S. Ct. 1265, 152 L.Ed 2d 330 (2002):

> "In this case, the interstitial nature of the legal question, the related
> expertise of the agency, the important of the question to
> administration of the statute, the complexity of that administration,
> and the careful consideration the agency had given the question
> over a long period of time all indicate that Chevron provides the
> appropriate legal lens through which to view the legality of the
> agency's interpretation here at issue." Id. at p. 222.

The Supreme Court has explained that under these circumstances the thirteen Courts of Appeal do not decide the issue a new for themselves. Instead, they and the Supreme Court, must defer to the agency. The same reasoning applies here.

As Boxell's Request for Judicial Notice explains, the Secretary of Labor has made essentially the same argument in other cases. This is not an argument made in bad faith; it is an argument which reflects the procedural fairness and requirements of ERISA." Document Number 18, pages 18-20.

C.    Analysis

Admittedly, the Court denied the motion. However, merely because the Court rejected the argument does not equate to the conclusion that the argument was made in bad faith and intended to harass Defendant. Otherwise, every losing argument would warrant an award of fees. Second, merely because the argument failed does not mean it was not reasonable or that it was made in bad faith: as stated, this argument is very similar to arguments made by the Secretary of Labor. Rosati's Dec. ¶ 12. Additionally, the Court's decision on standard of review/scope of discovery, supported by nothing else, does not constitute "some degree of success on the merits' A claimant does not satisfy that requirement by achieving . . . a 'purely procedural victory." *Hardt, supra*, 560 U.S. at 255. While establishing abuse of discretion review is not insignificant, it is, absent more - - which is wholly lacking here - - merely a purely procedural victory, not success on the merits. Therefore, Defendant is not entitled to fees as to the standard of review motion.

Furthermore: (1) as stated, there was no bad faith in advancing this argument; (2) Boxell cannot satisfy any significant award (see Boxell declaration); (3) an award of fees would only

tend to deter claimants from advancing potentially valid arguments; (4) the plan as a whole obtained no benefit; and (5) while Defendant prevailed on the argument, it did not prevail on the merits of the case <u>and</u> its failure to provide a fair process to Boxell means she is likely to ultimately receive benefits.

## IV. DEFENDANT'S CLAIM FEES FOR PROSECUTING THE COUNTERCLAIM ARE FAR IN EXCESS OF DEFENDANT'S ACTUAL FEES

The reality here is that the Plan's calculations of its claimed fees for prosecuting the counterclaim and the method in which it calculated those fees for prosecuting the counterclaim is wholly unrealistic. Ms. Bengs' declaration allocates one tenth of every time entry relating to the motion on the merits to the counterclaim when in fact virtually no work was done on the counterclaim as to most time entries and work on the counterclaim was done in just a few incremental parts.  Here is the work done on the counterclaim:

1.      Document 10, filed June 24, 2013, the answer and counterclaim.  The answer is 27 pages; the counterclaim is three.

2.      Defendant's memorandum in support of motion for summary judgment, Document 41, filed December 16, 2013, is 25 pages long, of which 23 lines (fact number 23 on page 10, and parts of pages 24 and 25) concern the counterclaim.

3.       In Document No. 45, filed January 13, 2014, which is Defendant's response opposing plaintiff's motion for summary judgment, Defendant reiterates that it is entitled to recover its overpayment claim Page (part of 16 and 17) of the 17 page document - - are virtually identical to the presentation made in Document No. 41 - - and also not the main to that issue because it was the opposition to plaintiff's

motion, which did not address the counterclaim.

4.      In defendant's reply in support of its motion for summary judgment four lines of
        its 15 page brief (on page 15) address the overpayments.

No other brief or document filed in the case addresses the overpayment.  The time
required to do this work could have been no more than two or three hours.

Contrary to defendant's arguments, it was not only _not_ in bad faith to defend the
counterclaim, it was tactically legitimate and ethically _mandated_.

A.      Generally, in Plaintiff's counsel's experience, counterclaims for ERISA
overpayments are resolved as offsets to benefits payments.  It was and is my expectation that will
be the ultimate resolution of the counterclaim.  That is, the amount of the counterclaim will be
offset against the amounts owed by the Defendant to Boxell.  Rosati's Dec. ¶ 5.A.

B.      Second, although the rule in the Seventh Circuit regarding such
overpayment claims is clear and I am and was familiar with _Gutta v. Standard Select Trust
Insurance Plans_, 530 F. 3d 614, 621 (7th Cir. 2008), allowing a claim for repayment even if the
benefits the plan paid the beneficiary are not specifically traceable to the beneficiary current
assets because of commingling or dissipation, there is a split in the circuits on this question.
Specifically, the Ninth Circuit in _Bilyeu v. Morgan Stanley Disability Plan_, 683 F. 3d 1083 (9th
Cir. 2012) was unpersuaded by the Seventh Circuit and other circuit rulings on this point and
held that the fiduciary must recover from specifically identified funds in the beneficiary
possession rather than from general assets.  _Id._ at 1095.  The Supreme Court denied certiorari in
_Bilyeu_. _First Unum Life Insurance v. Bilyeu_, 2013 U.S. Lexis 1094 (U.S. February 19, 2013).

C.      It is not unreasonable to anticipate that at some point the Supreme Court

will resolve this circuit split and grant certiorari in some case addressing the issue. If that happened while Boxell's case was pending the rule in *Gutta* could have been reversed and Defendant's overpayment claim could fail. This (an overpayment claim fails), in fact, commonly occurs in the Ninth Circuit. See, e.g., *Wong v. Aetna Life Insurance Company*, 2014 U.S. District Lexis 135661 (S.D., Cal. September 24, 2014) in which I prevailed on this precise argument and issue.

D.    Thus, it was tactically proper and ethically necessary to defend the counterclaim for overpaid ERISA benefits - - even in the Seventh Circuit - - on the premise that the counterclaim could be resolved through a disposition of the case in chief by settlement or on the premise that the Supreme Court could grant certiorari to resolve the split in the circuits between *Bilyeu* and cases such as *Gutta* and may resolve the conflict by adopting the *Bilyeu* standard. Either way not only is it appropriate to preserve the client's rights on these issues by defending the counterclaim but, in my opinion, malpractice not to do so. Rosati's Dec. ¶ 5.C.

That explained, Plaintiff's counsel didn't spend any time defending the counterclaim in the briefing on the merits because in the time the Boxell case was pending before this Court the Supreme Court did not grant certiorari on the conflict between *Gutta* et al. and *Bilyeu*. Therefore, Plaintiff's counsel knew Boxell would lose the counterclaim. Rosati's Dec. ¶ 6.

However, as stated counsel did attempt to open settlement negotiations - - making calls and writing letters/emails to that end. Admittedly, counsel was hoping to reach a global resolution. However, he would have readily resolved the counterclaim, standing alone, if a global resolution was not available on the following terms:

A.    The amount of counterclaim is set off against any benefits awarded to Boxell.

B.    If no benefits are awarded to Boxell, when judgment is entered it will include judgment in favor of the Plan on the counterclaim.

C.    Subject to one qualification: if during the pendency of the claim, the Supreme Court granted certiorari on the *Gutta/Bilyeu* conflict, Boxell would reserve the right to withdraw the stipulation and contest the counterclaim. Rosati's Dec. ¶ 7.

Second, Defendant's method of allocating time between defending the case in chief and prosecuting the counterclaim literally makes no sense:

A.    It is clear that the time entries of Ms. Bengs' attachment (Document 74-2) are not all of her time entries. For example, there are no time entries after September 16, 2013 until December 2, 2013. This was the time frame during which Defendant was complying with the discovery order and during which Plaintiff's counsel called and wrote Ms. Bengs several times in an attempt to open up settlement negotiations or arrange for a mediation. Rosati's Dec. 8.A.

B.    That stated, the allocation formula as set forth in Ms. Bengs' declaration at Paragraph 9. d. allocating 1/10 of each entry for the counterclaim and 9/10 of each entry defending the case in chief makes no sense and is not supported by the facts.

C.    That allocation literally makes no sense because virtually all of the time and virtually all the entries dealt exclusively with issues on defense of the case in chief. The counterclaim was simply not an issue in most of the pleadings in this case and when it was it was very briefly addressed. Specifically, the counterclaim only arises in the following time entries from Exhibit 1 to Ms. Bengs declaration:

i.    6/19/13 for the preparation of the answer to plaintiff's complaint and the counterclaim for overpayment of plan benefits. Ms. Bengs seeks to allocate half

of the time to the counterclaim and half to the answer. However, the actual document (Document 10 filed June 24, 2013) is 31 pages, the counterclaim beginning on page 28. Thus, on its face, only 1/10 of that entry is attributable to the counterclaim.

ii.    6/28/13: 3/10's of an hour to analyze the answer on affirmative defenses to the counterclaim.

iii.    For entries from 12-2-13 to the end of the claim Defendant asserts that 1/10 of all time entered is attributable to the counterclaim. However, only a few of the documents filed actually address the counterclaim and then only briefly:

| Doc # | Filed | Item | Pages of Pleadings | Pages Addressing counterclaim |
|-------|-------|------|--------------------|-------------------------------|
| 39 | 12-16-13 | Plaintiff's MSJ P's & A's | 25 | 1 |
| 41 | 12-16-13 | Defendant's MSJ P &A's | 25 | about 1 [1] |
| 45 | 1-13-14 | Def. Response to Plaintiff's MSJ | 17 | about 1 [2] |
| 47 | 1-13-14 | Def P & A's re: MTS | 4 | 0 |
| 48 | 1-13-14 | P's Response to Def.'s MSJ | 25 | 0 |
| 51 | 1-27-14 | Def.'s 2d MTS | 4 | 0 |

[1] 23 Lines on: page 10(¶ 23 - - 3 lines) and 20 lines on pages 24-25.

[2] Virtually identical to the text in Document No. 45 (21 lines on pages 16-17).

POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S
PETITION FOR FEES & COSTS

| 52 | 1-27-14 | Def.'s Reply in Support of MSJ | 15 | less than 1 [3] |
| 53 | 1-27-14 | P's Reply in Support of MSJ | 14 | 0 |
| 54 | 1-27-14 | P's Motion to Modify Sch. Order | 14 | 0 |
| 57 | 1-28-14 | P's Opp. To 2 MTS | 1 | 0 |
| 58 | 2-3-14 | Def's Reply re: MTS | 11 | 0 |
| 59 | 2-10-14 | Def's Response to Motion to Modify | 14 | 0 |
| 60 | 2-21-14 | P's Reply to re: Motion to Modify | 6 | 0 |

Thus, the counterclaim was only addressed with reference to reviewing it, preparing two substantially identical approximately one page briefings on the topic in Documents Nos. 41 and 45, and adding four lines in Document No. 52. All of this together could not have taken more than two or three hours. None of the other entries possibly relates to the counterclaim because none of the other entries relate to any work on the counterclaim, i.e., making or responding to the counterclaim, as the documents filed demonstrate.

See analysis in Rosati's Declaration at ¶ 9.

The allocation method proposed by Defendant - - allocating one tenth of every time entry relating to the motion on the merits to the counterclaim is wholly devoid of any factual basis.

---

[3] 4 lines (on page 15).

None of the other matters count at all with the counterclaim. Realistically, it is Defendant's obligation to allocate its time reasonably, honestly, and fairly. Attempting to allocate time entries to the counterclaim when it clearly had nothing to do with the counterclaim is wholly improper and inappropriate.

## V. DEFENDANT'S "FEES ON FEES" ARE EXCESSIVE AND SHOULD BE DISALLOWED

Time spent on a fee request must bear "a rational relation to the number of hours spent on litigating a merits on the case." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 545 (7th Cir. 1999). Here, Defendant's "fees on fees are 19.2 hours on a total claim of 51.31 hours. See Beng's declaration, document 74-2, entry on last page for dates for 10/1/14-10/21/14. As discussed above, Defendant is not eligible for attorney's fees on the standard of review issue because the standard of review decision is not on the merits and it is not entitled to fees on the standard of review issue in any event. Second, as to the counterclaim issue Defendant's actual fees are substantial less than the claimed total - - reasonably it took only two or three hours. So, rather than attempt to resolve a minor fee issues, Defendant exaggerated its fee claim and spent nearly 40% of its total claimed time on a fee motion.

With so little reasonably at stake, the "fees on fees" are simply not appropriate, especially since if Defendant had actually properly attempted to assess fees the matter would have been resolved and there would have been no "fees on fees". The only reason Defendant incurred such excessive "fees on fees" was its attempt to claim fees to which it is not entitled. Under these circumstances no "fees on fees" should be awarded, or if awarded, "fees on fees" should be limited to no greater than one-fourth of a time of the actual fees awarded. See *Spegon, supra,* at

p. 554: spending 1/4 hours on fee petition for every hour of work on the merits held to be excessive, warranting reduction of "fees on fees".

## VI.  CONCLUSION

Defendant should be denied all fees it seeks for contesting the standard of review/discovery motion.  Defendant's claimed fees for contesting the counterclaim are excessive and in any event were unnecessary except for, at most, two or three hours.  If <u>any</u> fees are awarded, they should be limited to 2-3 hours of time.

ERISA LAW GROUP LLP

Dated: November 5, 2014

_s/ Robert J. Rosati_
ROBERT J. ROSATI, No. 112006
robert@erisalg.com
6485 N. Palm Avenue, Suite 105
Fresno, California 93704
Telephone: 559-478-4119
Telefax: 559-478-5939

Attorneys for Plaintiff,
KATHLEEN BOXELL

## CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF FRESNO

I, MAI VANG, certify and declare as follows: I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within above entitled action; my business address is 6485 North Palm Avenue, Suite 105, Fresno, California 93704.

I hereby certify that on November 5, 2014, I served the foregoing documents described as: **POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT'S PETITION FOR FEES AND COSTS** the interested parties as follows:

Tina M. Bengs                                  Attorneys for Defendant,
Ogletree, Deakins, Nash, Smoak &               THE PLAN FOR GROUP INSURANCE OF
Stewart, P.C.                                  VERIZON COMMUNICATIONS, INC.
56 S. Washington Street
Suite 302
Valparaiso, IN 46383

*Tina.Bengs@ogletreedeakins.com*

[X]    **ELECTRONICALLY:** I caused a true and correct copy thereof to be electronically filed using the Court's Electronic Court Filing ("ECF") System and service was completed by electronic means  by transmittal of a Notice of Electronic Filing on the registered participants of the ECF System.  I served those parties who are not registered participants of the ECF System as indicated below.

[ ]    I placed the [ ] original / [ ] a true copy thereof enclosed in a sealed envelope(s) to the parties listed above and caused such envelope(s) to be delivered by:
       [ ] **U.S. POSTAL SERVICE**        [ ] **OVERNIGHT DELIVERY**

[X]    **BY EMAIL:** I electronically transmitted a true and correct copy thereof to the interested parties' electronic notification address(es) of record before close of business for the purpose of effecting service and the transmission was reported as complete and without error.

I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.  Executed on November 5, 2014, at Fresno, California.

                          /s/ Mai Vang
                          MAI VANG