UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| KATHLEEN BOXELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:13-CV-089 JD |
| | ) | |
| THE PLAN FOR GROUP INSURANCE | ) | |
| OF VERIZON COMMUNICATIONS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>OPINION AND ORDER</u>**

This is an ERISA case in which the Plaintiff Kathleen Boxell sought long-term disability

benefits from the Defendant, The Plan for Group Insurance of Verizon Communications, Inc.

The Plan also filed a counterclaim in which it sought recovery of an overpayment of benefits that

resulted from Ms. Boxell's receipt of retroactive social security benefits. On cross-motions for

summary judgment, the Court granted judgment in favor of each party on their respective claims,

remanding Ms. Boxell's claim for benefits to the Plan and entering judgment in favor of the Plan

on its counterclaim. Both parties have now moved for attorneys' fees and costs under 29 U.S.C.

§ 1132(g)(1) for various portions of this litigation, and those motions have been fully briefed.

For the reasons that follow, the Court grants both motions in part.

## I. FACTUAL BACKGROUND

Ms. Boxell was employed by Verizon Communications Inc. as a Network Engineer. In

2009, Ms. Boxell began experiencing pain in her lower back and in both legs. Although Ms.

Boxell was initially able to work through the pain, it gradually became worse and interfered with

her ability to work. On September 29, 2009, with the approval of her doctor, Ms. Boxell went on

medical leave and sought disability benefits. As a Verizon employee, Ms. Boxell was eligible to

receive short-term and long-term disability benefits under the Plan for Group Insurance, an employee benefit plan governed by the Employee Retirement Income Security Act. She applied for and received short-term disability benefits, which are payable for up to 12 months under the Plan. Once that period expired, she applied for long-term disability benefits, which the Plan again approved.

However, the Plan contains a limitation provision under which long-term disability benefits for certain conditions will be paid for only 12 months. At the time the Plan approved Ms. Boxell's claim for long-term disability benefits, it notified her that her conditions were subject to that limitation, and that to receive long-term disability benefits beyond 12 months, she would have to show that she was disabled due to conditions that were not subject to that limitation. Shortly before the 12-month period expired, the Plan sent Ms. Boxell a letter notifying her that she was not entitled to continuing benefits because of the limitation provision, and that her disability benefits were terminating accordingly. Ms. Boxell appealed that decision, but the Plan upheld its denial, so Ms. Boxell filed a complaint in this Court under 29 U.S.C. § 1132(a)(1). Meanwhile, Ms. Boxell had applied for and received social security disability benefits. Under the Plan, such benefits reduce the amount of disability benefits to which a claimant is entitled, so Ms. Boxell's receipt of retroactive social security benefits meant she had received an overpayment from the Plan. Accordingly, the Plan filed a counterclaim against Ms. Boxell in which it sought to recover that overpayment.

On September 22, 2014, the Court granted summary judgment in favor of each party on their respective claims. On Ms. Boxell's claim, the Court found that the Plan had abused its discretion in denying Ms. Boxell's claim for continuing benefits, so the Court remanded the matter to the Plan to conduct a full and fair review of her claim and, if it found in her favor,

retroactively reinstate her benefits. The Court also found in favor of the Plan on its counterclaim, and entered judgment in the Plan's favor in the amount of $12,828. Both parties have now moved for attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1). Ms. Boxell subsequently filed a notice in which she reports that her long-term disability benefits have been reinstated.

## II.  STANDARD OF REVIEW

The parties seek attorneys' fees under section 502(g)(1) of ERISA, which states: "In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "[A] fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). A party "need not be a 'prevailing party' to be eligible for an attorney's fees award under § 1132(g)(1)," but a "trivial success on the merits" or a "purely procedural victory" do not suffice. *Id.* at 252.

"'[A]fter concluding that a party has shown 'some degree of success on the merits' and is thus eligible for fees, courts must determine whether fees are appropriate.'" *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of. Wisc., Inc.*, 657 F.3d 496, 505 (7th Cir. 2011) (quoting *Pakovich v. Verizon Ltd. Plan*, 653 F.3d 488, 494 (7th Cir. 2011)). The Seventh Circuit has employed two tests for analyzing whether attorney fees should be awarded to an eligible party in an ERISA case. The first test looks at the following five factors: (1) the degree of the offending parties' culpability; (2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the

parties' positions. *Raybourne v. Cigna Life Ins. Co. of N.Y.*, 700 F.3d 1076, 1090 (7th Cir. 2012); *Kolbe*, 657 F.3d at 505–06. "The second test looks to whether or not the losing party's position was 'substantially justified.'" *Kolbe*, 657 F.3d at 505–06.

Both tests essentially ask the same question, though: "was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Id.* (quoting *Quinn v. Blue Cross & Blue Shield Assoc.*, 161 F.3d 472, 478 (7th Cir. 1998)); *see also Huss v. IBM Med. & Dental Plan*, 418 F. App'x 498, 512 (7th Cir. 2011) ("A five-factor test may inform the court's analysis, but the factors in the test are used to structure or implement, rather than to contradict, the substantially justified standard as the bottom-line question to be answered." (internal quotations and alterations omitted)). "Substantially justified" means "'justified to a degree that could satisfy a reasonable person.'" *Trustmark Life Ins. Co. v. Univ. of Chicago Hosps.*, 207 F.3d 876, 884 (7th Cir. 2000) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Despite the references to good faith and harassment, this question does not require a subjective inquiry into the parties' internal intents, but rests on the premise that a party who pursues a position that is not substantially justified "has, in an objective sense, really done nothing more than harass his opponent by putting him through the expense and bother of litigation for no good reason." *Prod. & Maint. Emps. Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1405 (7th Cir. 1992). The Seventh Circuit recognizes a modest but rebuttable presumption in favor of awarding attorney fees. *Huss*, 418 F. App'x at 511; *Hess v. Reg-Ellen Mach. Tool Corp.*, 367 F. App'x 687, 690 (7th Cir. 2010).

If a court decides that a party should be awarded attorney fees, it must then determine the appropriate amount. Section 1132(g)(1) permits a court to award a "*reasonable* attorney fee and costs." 29 U.S.C. § 1132(g)(1) (emphasis added). These fees are typically determined by

4

calculating the "lodestar," which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544 (7th Cir. 2009) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The party seeking the fees bears the burden of establishing the reasonableness of both the number of hours spent and the hourly rate. *Pickett v. Sheridan Health Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011); *see Hensley*, 461 U.S. at 437.

### III. ANALYSIS

Both parties move for an award of attorneys' fees in their favor. Ms. Boxell seeks $120,060.49 in fees and costs incurred in litigating her claim for benefits, which resulted in a remand to the Plan for a proper review of her claim. The Plan seeks $7,359.69 in fees for litigating its counterclaim to recover its overpayment, in addition to $10,034.40 in fees for time it spent responding to Ms. Boxell's motion as to the standard of review. In response, each party disputes that the other should receive fees, and further contests the reasonableness of the fees sought. The Court addresses each party's request in turn.

### A.     Ms. Boxell's Motion for Attorney Fees and Costs

Ms. Boxell seeks attorneys' fees for all of the time her counsel spent litigating this case. The Plan does not dispute that Ms. Boxell is eligible for attorneys' fees—that she achieved some degree of success on the merits on her claim, *Hardt*, 560 U.S. at 255—but argues that a fee award is not appropriate under these circumstances. Accordingly, to determine whether to award fees, the Court considers the substantial justification test and the five-factor test to decide whether the Plan's litigation position was substantially justified and taken in good faith. *Pakovich*, 653 F.3d at 494.

## 1.    Substantial Justification Test

As to the substantial justification test, the Court finds that the Plan's litigation position was not substantially justified. The Court found for multiple reasons that the Plan's denial of Ms. Boxell's benefits violated her rights under ERISA, and the Plan's arguments on the dispositive issues were not well-founded. Perhaps the most fundamental problem with the denial of benefits was that the Plan upheld its denial of Ms. Boxell's benefits for the exact opposite reasons than it initially denied her claim. The Plan initially stated, in part, that Ms. Boxell was disabled due to fibromyalgia, but that her benefits were terminating because fibromyalgia was subject to a 12-month limitation of benefits. In denying Ms. Boxell's appeal of that decision, though, the Plan stated that Ms. Boxell was not disabled at all, and it never mentioned fibromyalgia as being subject to any limitation (the claims log suggests that by that time, the Plan had decided that fibromyalgia was *not* subject to any limitation).

The Plan first attempted to minimize this about-face by arguing that the initial denial letter should not actually be read as indicating that Ms. Boxell was disabled due to fibromyalgia. But that argument cannot be squared with the letter's express statement that "you are disabled due to low back pain and fibromyalgia," not to mention its reference that her physician listed fibromyalgia among her diagnoses. (R. 3841–42). The Plan next argued that this language was merely a scrivener's error, but that position was wholly unsupported by the record or the law. The drafting history of the initial letter, which the Plan did not cite to or acknowledge, conclusively demonstrated that its statement that Ms. Boxell was disabled due to fibromyalgia was not a mere clerical error, but a deliberate insertion based on the Plan's belief that the record showed Ms. Boxell was in fact disabled due to fibromyalgia. (R. 4330 "I also added fibromyalgia as one of the [diagnoses] as previous reviews indicated med supported r/ls [restrictions and limitations] due to fibro."). It was improper and unjustified for the Plan to present this argument

that was directly contradicted by the record and to fail to acknowledge that contradiction in its briefing. Besides lacking factual support, this argument was legally unsound, too. In arguing that the putative scrivener's error was harmless, the Plan cited *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601 (7th Cir. 2007). There, the error appeared in the final letter denying the appeal and thus induced no reliance by the claimant and was harmless. *Id.* at 605 n.2. Here, though, the error occurred in the initial denial letter, and would have misled Ms. Boxell about the basis for the denial of her claim and the information she needed to present to appeal that denial.

Other arguments the Plan offered in support of its decision were similarly unjustified. For example, the Plan argued in part that it properly found that Ms. Boxell was not disabled due to fibromyalgia based on a statement by Ms. Boxell's treating physician. Specifically, the Plan argued that the physician "expressly excluded the diagnosis of fibromyalgia as a 'disabling diagnosis' and instead identified it as just an 'additional diagnosis.'" [DE 45, p. 10; DE 52 p. 9]. As noted in the Court's order, though, that argument misrepresented the record, as the doctor did no such thing. The treatment note in question listed five impressions, one of which was fibromyalgia, and did not differentiate between "disabling diagnoses" or "additional diagnoses." (R. 3847). The Plan's representation to the contrary, which it included in both its response and reply briefs, was unjustified. Another basis for the Court's conclusion was that the Plan failed to offer an adequate explanation for discounting the Social Security Administration's finding that Ms. Boxell was disabled. The Plan's briefing on that topic only superficially addressed the reasons for discounting the social security award, and as discussed in the prior order, none of the Plan's reasons withstand any scrutiny. [DE 61 p. 21–22]. Likewise, the reasoning in the denial letter for finding that Ms. Boxell was not disabled due to fibromyalgia was poor, and the Plan did

not even attempt to defend those reasons in its briefing. Accordingly, the Court concludes that the Plan's position in this matter was not substantially justified.

None of the arguments the Plan offers on this topic are responsive to this inquiry. In fact, the Plan does not mention any of the arguments it made in support of its decision or discuss why those arguments were justified, even if ultimately unsuccessful. Rather, it points out only that Ms. Boxell received more modest relief than she sought, since the Court remanded for further administrative proceedings instead of directly awarding benefits. If the Plan's position in this litigation was to acknowledge that it abused its discretion but to argue that the proper remedy was to remand for further proceedings instead of directly awarding benefits, this argument may be relevant. But that was not the case. The Plan's only argument at summary judgment was that its denial of benefits should be affirmed, and it only mentioned in a single footnote that the Court should remand for further proceedings if it found that the Plan abused its discretion.

In addition, the remedy upon finding that a plan abused its discretion is typically more a function of the posture of the case than a reflection of the merits of the parties' positions. Except in unusual cases where the record is so unequivocal as to the plaintiff's entitlement to benefits that a remand for further proceedings would be useless, the remedy is to restore the status quo that existed before the decision at issue. *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 778 (7th Cir. 2010); *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 835 (7th Cir. 2009). Here, the Court remanded for further proceedings because the Plan had never found that Ms. Boxell was entitled to long-term disability benefits past twelve months, so restoring the status quo meant remanding to the Plan to decide (properly this time) whether she should receive benefits past that point. Thus, the fact that the Court remanded for further administrative

proceedings instead of awarding benefits outright does not show that the Plan's position was substantially justified.

The Court also acknowledges that not all of the Ms. Boxell's arguments were meritorious. For example, Ms. Boxell's insistence that the Plan acted under a conflict of interest and was engaging in a carefully orchestrated fraud was unfounded, and the positions the Plan took on those arguments were not unjustified. However, the presence of some poor arguments in support of a claim does not mean that a losing party is justified in opposing other dispositive arguments for which it has no legitimate response. And as discussed above, the Plan's positions on the dispositive points of this case were not substantially justified. Accordingly, the Court finds that the substantial justification test favors an award of attorneys' fees to Ms. Boxell on her claim.

## 2. Five-Factor Test

The Court next considers the five-factor test, which looks to: (1) the degree of the offending parties' culpability; (2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; (3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' positions. *Raybourne*, 700 F.3d at 1090; *Kolbe*, 657 F.3d at 505–06.

As to the first factor, the degree of the offending parties' culpability, the Plan's poor handling of Ms. Boxell's appeal weighs strongly in favor of awarding fees. As noted, when it first denied Ms. Boxell's claim for continuing benefits, the Plan stated that Ms. Boxell was disabled due to lower back pain and fibromyalgia, but that it was denying her claim because both those conditions were subject to a 12-month limitation-of-benefits provision. At some point during the appeals process, however, the Plan appears to have changed its interpretation of that

provision and concluded that fibromyalgia was not subject to its limitation. At that point, the Plan should have either awarded continuing benefits (having already concluded that Ms. Boxell was disabled due to that condition) or, if it needed to reassess her disability due to fibromyalgia, notified Ms. Boxell of the change and invited her to submit records supporting her disability. It did neither. Instead, after continually finding that she was disabled and assuring her that it was not questioning her disability, the Plan concluded that Ms. Boxell was not disabled at all and denied her benefits on that basis. Then, after Ms. Boxell initiated this litigation, the Plan continued to try to discount that inconsistency, in some cases through arguments that misrepresented or were squarely contradicted by the record. Thus, the degree of the offending party's culpability favors an award of fees.

As to the second factor, there is no indication that the Plan lacks the ability to satisfy a fee award, so this factor weighs in Ms. Boxell's favor, too. The third factor looks to the deterrent effect of a fee award. Though this is not a strong factor here, it still favors Ms. Boxell, as it could deter claims administrators from engaging in similar improper handling of claims. In addition, the need to adequately consider social security awards is likely to recur in other cases, as the Plan requires claimants to apply for social security benefits, and a fee award will encourage plan administrators to give proper consideration to such awards. The fourth factor— the amount of benefit conferred on members of the pension plan as a whole—is largely inapplicable in cases such as this that deal with an individual claim for benefits. To the extent an award of fees may have a deterrent effect against similar conduct in the future, though, it may favor an award. *Holmstrom v. Metro. Life Ins., Co.*, No. 07-CV-6044, 2011 WL 2149353, at *3 (N.D. Ill. May 31, 2011) ("The fourth factor, benefit to other members of the pension plan, is largely irrelevant in an individual dispute such as the instant case, although MetLife may be more likely to take

into account the Social Security Administration's decisions to award benefits after the instant case.").

The fifth factor, the relative merits of the parties' positions, has been characterized as "an oblique way of asking whether the losing party was substantially justified in contesting his opponent's claim or defense." *Sullivan v. William A. Randolph, Inc.*, 504 F.3d 665, 672 (7th Cir. 2007). Here, as discussed above, the Plan was not substantially justified in contesting Ms. Boxell's claim, so this factor favors Ms. Boxell as well, even in light of the Court's rejection of certain of Ms. Boxell's arguments. Accordingly, having considered all five factors, the Court concludes that this test favors an award of attorneys' fees to Ms. Boxell. Likewise, having considered both tests, the Court concludes that an award of attorneys' fees is appropriate under § 1132(g)(1).

### 3. The Amount of Fees

Ms. Boxell asks the Court for an award of attorneys' fees in the amount of $119,100 based on 198.5 hours at $600 per hour, plus costs and expenses of $960.49, for a total of $120,060.49. The Plan disputes the reasonableness of amount of hours as well as the rate. As to the number of hours reasonably spent, the Court must determine "the number of hours 'reasonably expended' by counsel in the litigation," which does not include hours that were "excessive, duplicative, or otherwise unnecessary" or hours that an attorney would not normally bill to a paying client. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552–53 (7th Cir. 1999); *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004). Here, the time for which Ms. Boxell seeks compensation consists of 19.2 hours for preliminary work; 53.8 hours relative to the motion on the standard of review and the scope of discovery; 91.9 hours relative to the motions for summary judgment and related motions; 24.0 hours preparing the motion for attorney fees; and 9.6 hours responding and replying to the motions for attorney fees. In its response, the Plan

offers two objections to the number of hours. First, it argues that the standard-of-review motion was unnecessary and unreasonable, so that none of the time spent on that motion should be compensated. Second, it argues that the time spent on the motions for summary judgment should be cut in half due to Ms. Boxell's limited degree of success on the merits. The Plan does not contest the 19.2 hours of preliminary work or the 24.0 hours preparing the motion for attorney fees, and it has not sought leave to respond to the request for 9.6 hours for the response and reply briefs.

As to the standard-of-review motion, the Court disagrees that this time was unreasonably spent and should be struck. Ms. Boxell's arguments as to the standard of review were not meritorious, and have not found traction within the Seventh Circuit. However, the arguments she advanced were substantially similar to arguments that the Department of Labor has presented on this issue in other courts. [DE 18-1: Brief of the Acting Secretary of Labor, Seth D. Harris, as Amicus Curiae in Support of Plaintiff-Appellant, *Halo v. Yale Health Plan*, No. 12-1447cv (2d Cir. Jan. 31, 2013) (arguing that because the plan "did not substantially comply with the regulations' requirements," the plaintiff "is therefore entitled to de novo judicial review of her claims by the district court")]. The Court thus does not find that the argument was made in bad faith, as argued by the Plan, or that it is outside the range of arguments that an aggressive but reasonable attorney would present on his client's behalf. The fact that the Court denied this aspect of Ms. Boxell's motion does not itself warrant excluding these hours, either. *Raybourne*, 700 F.3d at 1091 (holding that fees for the entire litigation were recoverable where the plaintiff "lost a few skirmishes along the way, but in the end, his victory was complete"). In addition, the Plan overstates its argument in claiming that Ms. Boxell had a "complete lack of success of the motion." [DE 76 p. 10].  The motion also sought discovery outside the administrative record to,

in part, ensure that the record submitted by the Plan was accurate. While the magistrate judge largely denied that request, too, he found that Ms. Boxell was at least entitled to a confirmation from the Plan that the administrative record was complete, so he ordered the Plan to submit an affidavit to that effect. [DE 21]. Thus, at least a portion of the time the Plan seeks to strike was productive, yet the Plan only asks to strike the entire amount. Therefore, the Court declines to strike the 53.8 hours spent litigating that motion.

The Plan next argues that the number of hours spent on the merits should be cut in half because Ms. Boxell only received a remand instead of a direct award of benefits, and because the Court rejected a number of her arguments. On the first issue, the Court disagrees that the remand order constitutes a lack of success that justifies reducing the number of hours. Ms. Boxell asserted only one claim in this action—that the Plan abused its discretion in denying her benefits—and she prevailed on that claim. Though the Court did not award Ms. Boxell those benefits outright, as she had requested, the remand was not an insignificant remedy. Prior to the remand, Ms. Boxell's rights under ERISA had been violated and she stood no chance of receiving a retroactive reinstatement of her long-term disability benefits; after Ms. Boxell prevailed on her claim and achieved a remand, the Plan was ordered to provide a proper review of her claim, which gave new life to her claim for benefits. In fact, the Plan did award Ms. Boxell benefits on remand, so this was not a hollow victory—she has now received everything she sought.

Likewise, though the Court rejected certain of Ms. Boxell's arguments, it declines to reduce the hours on that basis. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435. Thus, the fact that the Court rejected some

of Ms. Boxell's arguments does not itself justify reducing the number of hours. The Court finds that the total number of hours counsel spent litigating the merits of this claim was reasonable given the substantial size of the record and the number of legal and factual issues presented by both parties. Accordingly, the Court finds that Ms. Boxell is entitled to compensation for the 91.9 hours spent during that portion of this case. Therefore, the Court will award the full number of hours sought by Ms. Boxell, or 198.5 hours.

The Court next considers the appropriate hourly rate. A reasonable hourly rate "is to be based on the 'market rate' for services rendered." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554–55 (7th Cir. 1999). The best evidence of an attorney's market rate is what a client has agreed to pay him, but where an attorney primarily uses contingent fee agreements, a court should consider "evidence of rates similarly experienced attorneys in the community charge paying clients for similar work and evidence of fee awards the attorney has received in similar cases." *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011). Ms. Boxell's counsel, Robert J. Rosati, seeks a rate of $600 per hour. He does not have any clients who pay by the hour, though, so there is no presumptive hourly rate to use as a starting point, and he has not litigated a fee petition to a decision in many years. However, he has submitted affidavits from four other attorneys attesting to their own rates: Glenn R. Kantor and Joseph A. Creitz, both of California, state that their hourly rates are $650 and $700, respectively; Mark D. DeBofsky, from Chicago, Illinois, states that his hourly rate is $600; and Bridget O'Ryan, from Indianapolis, Indiana, states that her hourly rate is $350. Each of those attorneys specializes in representing plaintiffs in ERISA disability benefits claims.

The Plan argues primarily that these attorneys do not provide a proper comparison group because they are based out of the area, and argues that the Court should adopt Ms. O'Ryan's

hourly rate of $350 since she is the most local. However, when "the subject matter of the litigation is one where the attorneys practicing it are highly specialized and the market for legal services in that area is a national market," the relevant "community" is not the local market area, but the community of practitioners in that subject matter. *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 490 (7th Cir. 2009). ERISA is a specialized field with a limited number of attorneys who specialize in representing plaintiffs seeking disability benefits, and Ms. Boxell has adequately established that there is a national market for the services of those attorneys. Mr. Rosati's affidavit indicates that over thirty percent of his cases are outside of California. [DE 68 p. 9]. Mr. DeBofsky also estimates that there are fewer than 150 attorneys nationwide who regularly litigate ERISA disability claims for plaintiffs. [DE 72 p. 4]. Other of the affidavits describe this as a specialized and national practice area, and the Plan makes no effort to dispute this point.

A court may still reduce the rate for an out-of-town attorney where local counsel could have provided the same services at a lower rate, *Jeffboat*, 553 F.3d at 490; *Mathur v. Bd. of Trs. of S. Ill. Univ.*, 317 F.3d 738, 743–44 (7th Cir. 2003), but the Plan has not shown that doing so is warranted here. Ms. Boxell's affidavit states that she searched for attorneys who specialized in ERISA benefits cases, but did not find one in Indiana. Her submission of Ms. O'Ryan's affidavit indicates that at least one such attorney may have been available in Indianapolis, but even then, Indianapolis is not necessarily "local" to Fort Wayne, where Ms. Boxell is located. Further, given the national market for these services, an attorney's rate in Indianapolis does not necessarily provide a more accurate "local rate" than an attorney located elsewhere, nor is there any reason that Ms. Boxell should have preferred an attorney in Indianapolis to one in Chicago (which is not much farther from Fort Wayne) or in California. The Court therefore concludes that

the relevant community upon which to determine Mr. Rosati's market rate is the community of attorneys nationwide who specialize in representing plaintiffs in ERISA disability claims, and that it is not appropriate to adopt a local rate instead.

The Court must still consider, though, whether the affidavits Ms. Boxell has submitted from attorneys in that community support the $600-per-hour rate she seeks. The hourly rates claimed by those attorneys range from $350 to $700. The Court also notes that recent fee petitions that those attorneys have litigated for their own fees have resulted in awards of $350, $500, and $600 per hour. *Hannon v. Unum Life Ins. Co of Am.*, No. 1:12-cv-992, 2014 WL 4653058 (S.D. Ind. Aug. 6, 2014) ($350 per hour for Ms. O'Ryan); *Freeland v. Unum Life Ins. Co. of Am.*, No. 11-cv-053, 2014 WL 988761 (W.D. Wisc. Mar. 13, 2014) ($500 per hour for Mr. DeBofsky); *Dine v. Metro. Life Ins. Co.*, No. 05-3773, 2011 WL 6131312 (C.D. Cal. Dec. 9, 2011) ($600 per hour for Mr. Kantor). In addition, while those attorneys report their current hourly billing rates, it is unclear how many clients (if any, for some of them) actually pay those hourly rates for representation in litigation, so it is difficult to determine how representative those rates are of the attorneys' actual market value. *See Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150–51 (7th Cir. 1993). And that may somewhat reduce the persuasive value of those affidavits. *See Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 895 (7th Cir. 2001) (stating that while a court must consider evidence of fees charged by comparable attorneys, "it is entitled to determine the probative value of each submission and must arrive at 'its own determination as to a proper fee'" (quoting *People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1312 (7th Cir. 1996))). Finally, the Court notes that defense counsel has charged $339 per hour for her time during this case. Accordingly, the Court concludes that a rate within the range asserted by the affiants is justified, but that the reasonable hourly rate falls closer to the middle of that range than

the high end, as sought by Mr. Rosati. Therefore, the Court finds that an hourly rate of $450 is reasonable for Mr. Rosati's time in this matter.

Multiplying the 198.5 hours reasonably spent on this case by counsel's reasonable hourly rate of $450, the attorney fee award comes to $89,325. Ms. Boxell also seeks $960.49 in costs, and the Plan did not respond or object to that request, so the Court grants it as unopposed. Therefore, the Court awards Ms. Boxell a total award of attorneys' fees and costs of $90,285.49.

## C.     The Plan's Motion for Attorney Fees and Costs

The Plan also seeks an award of attorneys' fees under § 1132(g)(1). Specifically, it seeks the fees it incurred in litigating its counterclaim, on which it prevailed at summary judgment, as well as the fees it incurred in opposing Ms. Boxell's motion relative to the standard of review. As to the counterclaim, Ms. Boxell argues that an award of fees is not appropriate and that the number of hours for which the Plan seeks reimbursement is unreasonable. As to the motion relative to the standard of review, Ms. Boxell argues that the Plan is not eligible for attorneys' fees, and that even if it were, such an award would not be appropriate.

### 1.      Standard of Review Motion

Addressing the standard of review motion first, the Court concludes that the Plan is not eligible for fees under § 1132(g)(1). As the Supreme Court held in *Hardt*, to be eligible for fees, a party must achieve "some degree of success on the merits." 560 U.S. at 255. A party does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victory, but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.''" *Id.* (quoting *Ruckelshaus*, 463 U.S. at 688, n.9). The Seventh Circuit has noted that under this standard, "even the ultimate loser could receive an award of attorneys' fees and costs, if on the way to defeat the litigant won a skirmish

that conferred some legal benefit." *Loomis v. Exelon Corp.*, 658 F.3d 667, 674–75 (7th Cir. 2011).

Here, the Plan is not eligible for attorneys' fees, as its opposition to the motion on the standard of review[1] was a purely procedural victory. The motion sought a preliminary ruling on the standard of review that applied to Ms. Boxell's claim, since the applicable standard would affect the scope of discovery. Ms. Boxell did not ask for any injunction or judgment in her favor at that point, nor did the Plan receive one when the Court ruled in its favor on that issue. The Court merely declared the standard of review under which the merits of Ms. Boxell's claim would be analyzed and limited the scope of discovery accordingly. Ultimately, judgment was entered in Ms. Boxell's favor and against the Plan on her claim, so the outcome of the litigation on that claim cannot fairly be called a success for the Plan.

The Plan nonetheless characterizes the motion as a skirmish that it won on the way to defeat, and argues that it is therefore eligible for fees under *Loomis*. But even the language in *Loomis* applied only to a skirmish "that conferred some legal benefit." *Id.* The denial of the motion did not create any rights or responsibilities outside of this litigation, and conferred no legal benefit on either party. The skirmishes to which *Loomis* referred were more likely cases where a party achieves an injunction or consent decree even though the case is later mooted, or where they achieve a remand to an administrative agency where they ultimately lose. *See Young v. Verizon's Bell Atl. Cash Balance Plan*, 748 F. Supp. 2d 903, 911 (N.D. Ill. 2010) (collecting cases). The Plan achieved no such benefit through the standard-of-review motion. Accordingly,

---

[1] The motion in question addressed both the standard of review and the scope of discovery, though the Plan appears to limit its request to only the aspect of the motion that addressed the standard of review.

since the Plan did not achieve some degree of success on the merits, it is not eligible to receive the attorneys' fees it incurred in opposing that motion.

### 2. The Plan's Counterclaim

The Plan also seeks recovery of its attorney fees for its counterclaim, as to which it prevailed. Ms. Boxell does not dispute that the Plan is eligible to recover those fees, but argues that she was justified in opposing this claim, so fees should not be awarded. She further argues that the number of hours for which the Plan seeks compensation is unreasonable, but she does not take issue with the requested rate of $339 per hour. In deciding whether fees should be awarded, it is difficult to analyze whether Ms. Boxell's position on this issue was substantially justified, since she never took a position—her own motion for summary judgment did not mention the Plan's counterclaim, and she never responded to the Plan's motion as to its counterclaim. She now argues that her silence was justified because, even though the law in the Seventh Circuit clearly permits such a claim, the Ninth Circuit has adopted a narrower interpretation of that claim under which the Plan would lose, and she was hopeful that the Supreme Court would resolve the circuit split in her favor while this case was pending. *Compare Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008), *with Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012) (disagreeing with every other circuit to have considered the issue, and holding that a plan must trace any overpayment to specific funds in the recipient's possession in order to recover them).

It is hard to see how taking no position at all could be substantially justified, and hoping that the Supreme Court would overturn binding circuit precedent during the pendency of this action is quite a tenuous position. Moreover, even accepting that explanation as true, it would not establish that Ms. Boxell's position was substantially justified. Ms. Boxell's attorney admits that he knew the Supreme Court had denied certiorari in *Bilyeu* prior to the briefing on the motions

for summary judgment, and that he therefore "knew [he] would lose the counterclaim." [DE 78-1]. Yet rather than concede or stipulate on the counterclaim, he forced the Plan to continue litigating the matter and incurring attorneys' fees. Counsel does not indicate that he wished to preserve the issue for appeal, either, as might justify foregoing those options.[2] Counsel also states that he would have been willing to settle the counterclaim under certain conditions, but he never says he communicated that settlement offer to the Plan, so that does not justify his position, either. Accordingly, the Court finds that Ms. Boxell's position relative to the counterclaim was not substantially justified.

The five-factor test similarly favors an award of fees. As to the first factor, Ms. Boxell made the Plan continue litigating the counterclaim even after she knew she would lose, as just discussed. In addition, the terms of the Plan clearly entitle the Plan to repayment of any overpayment resulting from the receipt of social security benefits, so Ms. Boxell should have known upon her receipt of the back benefits that those amounts would be recoverable by the Plan, and preserved them accordingly. As to the ability to pay, which is factor two, Ms. Boxell's counsel has requested that any award of fees to the Plan be offset against a fee award in her favor. Since the Court has awarded fees to Ms. Boxell in an amount that greatly exceeds the Plan's fee request, she will have the ability to satisfy an award. The deterrence factor likewise favors an award to the extent it will deter parties in the future from inflicting litigation costs on their opponents even after they know they will lose. The fourth factor may also slightly favor an award of fees, as the Plan's recovery of the overpayment through the counterclaim ensures that those funds are available to pay other claims. Finally, as to the relative merits of the parties'

---

[2] It is clear that he did not intend to do so since, having ignored the counterclaim entirely in the district court, he would have waived any arguments against it on appeal.

positions, the Plan's position was supported by controlling circuit precedent, while Ms. Boxell took no position whatsoever, so this factor favors the Plan as well. Accordingly, the Court finds that an award of fees is appropriate.

As to the number of hours, the Plan first represents that it spent 2.25 hours on preliminary matters such as preparing and filing the counterclaim, and the Court finds that that amount of time is reasonable. As to the amount of time spent litigating the merits of its counterclaim, the Plan seeks compensation for 7.56 hours. It reached that total by calculating the total amount of time it spent on the motions for summary judgment, which was 75.6 hours, and then estimating that ten percent of that time was spent on the counterclaim. The Court agrees with Ms. Boxell that this estimation likely overstates the amount of time that counsel actually spent on the counterclaim. Ms. Boxell's claim against the Plan predominated the briefing at summary judgment, and involved a fact-intensive inquiry based on a nearly five-thousand-page record. The counterclaim, meanwhile, occupied only a page or two of the briefing, and was not legally or factually complex. Thus, the Court finds that about half the time the Plan seeks, or 4 hours, was reasonably spent in litigating the merits of the counterclaim.

The Plan also seeks 11.9 hours for time it spent preparing its motion for attorney's fees as to the counterclaim.[3] Since the Court is only awarding 6.25 hours' worth of fees for the substance of the counterclaim, the Court agrees that 11.9 hours is an excessive amount for the fee petition. The Plan sought under 10 hours for its work on the substance of the counterclaim, so its request for 11.9 hours on the fee petition was excessive in the first place. *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 554 (7th Cir. 1999) (requiring that "the hours claimed to have

---

[3] Counsel spent a total of 18.4 hours on the motion, but allocated 6.5 of those hours to its request for fees on the standard-of-review motion.

been expended on the fee request bear a rational relation to the number of hours spent litigating the merits of the case"). The Court has also awarded less than the Plan sought on the substance of the claim, further throwing its request for "fees on fees" out of proportion. Therefore, the Court will reduce this portion of time to 2 hours. *See Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894–95 (7th Cir. 2001) (reducing the hours spent on a fee petition from 10.5 to 2 to be proportional to the time reasonably spent on the merits). The total number of hours being awarded thus comes to 8.25. At an hourly rate of $339, the Plan's total fee award is $2,796.75.

## IV. CONCLUSION

Ms. Boxell's motion for attorneys' fees and costs [DE 66] is GRANTED in the amount of $90,285.49. The Plan's motion for attorneys' fees and costs [DE 74] is likewise GRANTED in the amount of $2,796.75. The Court therefore grants a net award in favor of Ms. Boxell in the amount of $87,488.74.

SO ORDERED.

ENTERED: July 21, 2015

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court